Lee, J.
Two questions occur in this case first, whether Mrs. Byrd under the deed and contract of the 29th of June 1828 has any lien express or implied, upon the estate of Coke, or any portion of it, for the amount of the annuity secured to her by that contract; second, as to the effect of the failure to record the deed of trust of the 21st of June 1848 until after the death of Coke, the grantor, upon the lien thereby created as against the general creditors of Coke. Of these in the order stated.
There is no just foundation for any claim to an express charge. There is a reservation of what is termed “ a mortgage or lien” upon the land conveyed in favor of Rebecca Innis for five hundred pounds, but nothing said of a lien for the annuity. The only terms in the deed which can furnish any semblance of a charge are those in which it is covenanted that in the event of Coke’s death, his estate should pay Mrs. Byrd three hundred dollars during her life for her board &c. Such terms or terms of similar import, mutatis mutandis, might in a will in favor of securing payment of just debts, perhaps, be held to constitute a charge, but in a contract of this character they cannot have this effect. They are but the words of a party intending to create a debt to be paid after his death in the form of an annuity for life to the other in the event she survived him. It was of course to be paid out of his estate as any other mere personal liability ; but it will *621 not constitute nor was it intended to constitute any charge in the nature of a specific lien. Considering that if a lien upon any thing it would be a lien upon the whole estate of the grantor real and personal, involving embarrassment and inconvenience in disposing of even the most inconsiderable article amounting to almost a disability to enjoy his property, an intention so to bind it should not be imputed unless plainly expressed. The terms used should be construed as a covenant for his representatives, — one on his own behalf being inappropriate, — and as binding his estate only in the sense in which any personal covenant binds that of the covenantor. If there is any lien under this contract, it can only be that implied charge, the creature of the court of equity, familiarly known as “ the vendor’s lien.”
The doctrine in regard to this lien although of comparatively modern origin, may now be regarded as well established in the English chancery; and although it has been adopted in several of the states in this country, as also in the circuit courts and Supreme court of the United States, yet in others of the states it has been questioned and unsettled or wholly repudiated. In Pennsylvania it has no existence; Kauffelt v. Bower, 7 Serg. & Rawle 64, 74: So in North Carolina; Womble v. Battle, 3 Ired. Eq. R. 182 : So in South Carolina; Wragg's representatives v. The Comptroller General and others, 2 Dessaus. R. 509: so in Maine; Philbrook v. Delano, 29 Maine R. 410; and in Massachusetts, per Story, J: in Gilman v. Brown, 1 Mason’s R. 191. In Delaware and Connecticut, the doctrine is questioned and unsettled. Budd v. Busti, &c. 1 Harring. R. 69; Atwood v. Vincent, 17 Conn. R. 575. In Virginia the doctrine has been admitted and such a lien asserted against the vendee or purchaser with notice from him. Cole v. Scot, 2 Wash. 141; Graves v. McCall, 1 Call 414; Duval v. Bibb, 4 Hen. & Munf. *622 113; Hatcher's adm’rs v. Handler's ex'ors, 1 Rand. 53; Tompkins v. Mitchell, 2 Rand. 428.
But although thus recognized in Virginia the doctrine has not been favored. On the contrary it has been denounced as violative of the policy of our law which seeks as far as possible to discourage secret liens and require all to be made matters of record; and a settled disposition has been manifested to extend the doctrine no farther than it has already been carried. See the remarks of Judge Carr in Moore v. Holcombe, 3 Leigh 597, 600, 601; quoting with approbation those of Chief Justice Marshall in Bayley v. Greenleaf, 7 Wheat. R. 46, 51; and those of Judge Tucker in Brawley v. Catron, 8 Leigh 522, 527. That such a doctrine is inappropriate in a state in which every debt may be at once made a lien by a judgment and in which the real estate of a decedent is made assets for the payment of his debts cannot well be denied; and the legislature of this state very clearly evinced the opinion which it entertained upon this point when at the recent revisal it adopted the policy of those states in which this lien had been repudiated by abolishing it formally by statutory enactment. Code of Virginia, ch. 119, § 1, p. 510.
From the English cases it would seem to be deduced that in general this lien is presumed to exist and that it will follow the subject into the hands of a purchaser with notice from the vendee. Hughes v. Kearney, 1 Sch. & Lef. 132; Mackreth v. Symmons, 15 Ves. R. 329, and the cases cited and reviewed by Lord Eldon; Saunders v. Leslie, 2 Ball & Beat. 509; Winter v. Anson, 3 Russ. 488, (3 Cond. Eng. Ch. R. 495;) Grant v. Mills, 2 Ves. & Beame 306. Nor will the mere taking of a note or covenant for the payment of the purchase money suffice to extinguish the lien. Gibbons v. Baddall, 2 Equ. Cas. Abr. 682, n. (b.); ex parte Peake, 1 Madd. R. 344; Cary’s Ch. R. 25, cited *623 3 Sug. Vend. [192], [193] ; Winter v. Anson, uli sup.; Hughes v. Kearney, ubi sup.; Teed v. Carruthers, 2 Younge & Coll. 31, 21 Eng. Ch. R. 31. Nor will it make any difference that the purchase money claimed is in the form of an annuity and not a gross sum. Blackburn v. Gregson, 1 Bro. C. C. 420 ; Tardiffe v. Scrugan, cited 1 Bro. C. C. 423. So in case of a covenant for payment of purchase money in weekly sums, the vendor was held entitled to the lien, by Wigram V. C. in.Matthew v. Bowler, 6 Hare’s R. 110, (31 Eng. Ch. R. 110.) It is true that Lord Camden’s decision in Tardiffe v. Scrugan would appear to have been criticised and questioned by Lord Eldon in Mackreth v. Symmons; and in Clarke v. Royle, 3 Simons’ R. 499, 502, the vice chancellor (Sir Lancelot Shadwell) is reported to have said that it appeared to him that Lord Eldon had in Mackreth v. Symmons expressly overruled Lord Camden’s decision in Tardiffe v. Scrugan; and Tucker, P. in Brawley v. Catron, 8 Leigh 522, 530, speaks of the latter case as overruled. He says “ it certainly was.” However in Buckland v. Pocknell, 13 Simons’ R. 406, 412, (36 Eng. Ch. R. 406,) Sir L. Shadwell alluding to what he had been reported as having said in Clarke v. Royle, observed that if that had been said in those very terms, it was said too strongly ; because although Lord Eldon was not satisfied with the decision in Tardiffe v. Scrugan in all its parts, yet it could not be said that he had overruled it. The decision too is supported by that of Matthew v. Bowler above cited and the case of Winter v. Lord Anson; and is fully sustained by the opinion of Sir Edward Sugden who thinks that it is still an authority and that in such a case the lien will be raised. 3 Sug. Vend. ch. 18, § 32, 38, p. 127, 131, (ed. of 1843.)
But in every case whether of an entire gross sum or a sum payable in installments or in the form of an *624 annuity for lives, the question of lien depends on the particular circumstances; and although generally speaking the lien exists, yet it may be waived or repelled by the character of the case. “ The rule” says Judge Story “ is manifestly founded on a supposed conformity with the intention of the parties upon which the law raises an implied contract; and therefore it is not inflexible but ceases to act where the circumstances of the case do not justify such a conclusion.” Gilman v. Brown, 1 Mason’s R. 191. What are the circumstances which shall decide whether lien or no lien is a matter of some difficulty and obscurity, and many doubts and nice distinctions will be found in the authorities. As the lien is generally presumed, it would seem that the burden is upon the purchaser to show that it was waived. Hughes v. Kearney, above cited; Mackreth v. Symmons, 15 Ves. R. 329 ; Garson v. Green, 1 John. Ch. R. 308. But this the purchaser may do not only by showing an express agreement to that effect, but also by the reasonable inference and implication from the circumstances. Low it would seem settled that the mere taking a bond, promissory note, bill of exchange or a simple covenant of the vendee himself will not repel the lien because as said by Lord Eldon it may have been given not to supersede the lien but for the purpose of ascertaining the debt and countervailing the receipt endorsed upon the conveyance. But it is equally clear that where a distinct and independent security is taken either of other property or the responsibility of a third person the party having carved out his own security the law will not come to his aid by creating another and the equitable lien will be gone. Bond v. Kent, 2 Vern. R. 281; Fawell v. Heelis, Amb. R. 724; Nairn v. Prowse, 6 Ves. R. 752; Cole v. Scot, 2 Wash. 141; Fish v. Howland, 1 Paige’s R. 20; Wilson v. Graham's ex'or, 5 Munf. 297 ; Gilman v. Brown, 1 Mason’s R. 191; *625 S. C. 4 Wheat. R. 255. In such cases the waiver of the lien is placed upon the ground of intention deduced from the party’s taking a special security. See 3 Sugd. Vend. 191; 4 Kent’s Comm. 153. So where although the responsibility of a third person be not taken, if it appear that the note bond or covenant was substituted for the consideration money and was in fact the thing bargained for, the lien will not exist. There it may be inferred that credit was given exclusively to the person on whom the security was taken. Thus in Clarke v. Royle, 3 Sim. R. 499, (5 Cond. Eng. Ch. R. 218;) the conveyance was in consideration of the vendee entering into covenants therein contained for an annuity to the vendor and three thousand pounds to certain persons in the event of the vendee’s marrying. The vice chancellor distinguished the case from Tardiffe v. Scrugan. lie considered that the deed plainly marked out that the consideration on the one side was the conveyance of the estate and on the other the entering into the covenants. He said that to declare a lien in such a case would be to go further than any of the cases that had been previously decided upon the subject of lien on purchased estates and to do that which appeared to be contrary to the intention of the parties. He accordingly pronounced against the lien.
This case is cited as authority and with apparent approbation by Tucker, P. in Brawley v. Catron, 8 Leigh 522, 530; aud although the vice chancellor said that he considered it decided by the case of Winter v. Lord Anson, 1 Sim. & Stu. 434, (1 Cond. Eng. Ch. R. 221), in apparent ignorance of the fact that the opinion of Sir J. Leach in that case had been overruled by Lord Chancellor Lyndhurst (3 Russ. R. 488, 3 Cond. Eng. Ch. R. 495), yet its weight as authority is not on that account lessened: because the difference between Sir J. Leach and Lord Lyndhurst was not in the principle *626 applicable to the case but as to the exact, state of the case. The former when he decided against the lieu (for he had at first decided in favor of it) thought that the case was in principle the same as if the conveyance had stated the real contract of the parties; and that by the effect of that contract, the vendor agreed to part with his estate on consideration of the bond for the future payment of the price and that upon the execution of such bond the estate passed to the vendee in equity as well as at law. Lord Lyndhurst however-held that the lien was not affected by the circumstance that the period of-payment was dependent on the life of the vendor. He did not think it afforded such evidence of intention to rely on the personal credit of the vendee as would waive the lien. The fault in the reasoning of Sir John Leach, as stated by Sugden (3 Sug. Vend. 187. § 6) was that he placed the case on grounds that did not exist. He assumed that it was a case in which in effect the conveyance was in consideration of a covenant in a deed to pay the price at the future period. But though the conveyance was in pursuance of the agreement (which however was to take a bond and not a covenant) it did not otherwise refer to it and was expressed to be made not in consideration of the agreement but in consideration of the purchase money. In Clarke v. Royle however the very case was presented which was erroneously assumed to exist in Winter v. Lord Anson. The conveyance was in fact in consideration of covenants entered into by the same deed for payment of the price. “ There is a marked difference,” says Sir Edward Sugden, “ between a conveyance as for money paid with a separate security for the price whether by covenant bond or note, and a conveyance expressed to be in consideration of covenants which the purchaser enters into by the deed itself.” “It may be considered against the bearing of such a security for the pur *627 chase money to raise another upon the estate itself by implication from the very transaction.” He concludes therefore that Clarke v. Royle is not shaken by Lord Lyndhurst's decision in Winter v. Lord Anson.
The principle of the case of Clarke v. Royle was applied in the case of Parrott v. Sweetland, 3 Mylne & Keene 655, (10 Cond. Eng. Ch. R. 348.) There a receipt was endorsed on the conveyance for the bond of the vendee conditioned for the payment of three thousand pounds to one Orlebar with whom the vendor was about to be united in marriage, and expressed to be the full consideration to be given by the vendee. Sir John Leach, master of the rolls, held that it was a case of substitution for the price and not security, and pronounced against the heir. The cause was reheard before the V. C., Sir L. Shadwell and Mr. Justice Bosanquet, sitting as lords commissioners, and the decree of the master of the rolls was affirmed. So in Buckland v. Pocknell, 13 Sim. R. 406, (36 Eng. Ch. R. 406,) which was the case of a conveyance in consideration of certain annuities granted by the vendee and which he covenanted to pay, the vendee also being bound to pay off a mortgage debt to which the estate was subject: held by Sir L. Shadwell, V. C. referring to Parrott v. Sweetland, that there was no lien for the annuity. And the same principle may be traced in other cases.
How the case before us seems plainly to fall within the class of which Clarke v. Royle is the leading case. It differs from that case in no material particular. Here the consideration of the conveyance is the sum of five thousand three hundred and sixty-five dollars, and the covenants of Coke to maintain Mrs. Byrd during her life, for the payment of the annuity, in case she should survive him, of three hundred dollars if she chose to board out of his family, or if she should continue in his family after his death, of one hundred and *628 fifty dollars; and in the latter case, that she was to have a room and furniture &c. and in either case a maid servant to wait upon her. These covenants of the vendee, and the conveyance to him were by the same deed, and upon the principle of the above cases, the covenants were the thing contracted for, and no lien can be held to exist.
If we look still further and more closely into the instruments executed by these parties to deduce from them what their meaning must have been, according to the principle laid down by Lord Lyndhurst in Winter v. Lord Anson and to the view of Judge Story in Gilman v. Brown, we must be brought to the same conclusion. Here is a conveyance by the grantor of her whole interest in a large plantation with all the live stock of every kind upon it, and all the farming implements used in its cultivation, the crops on hand and those then growing, the household and kitchen furniture at the mansion-house, just as it stood and a carriage and harness : also all the grantor’s interest in the slaves of her husband, and her interest in the estate real and personal, as heir and distributee of three of her daughters who had died after their father: also fourteen slaves which were the separate property of the grantor. All this property is conveyed to the grantee forever free and quit of any claim of the grantor and with covenants to assure full and perfect title, unencumbered, against the grantor and her heirs forever subject only to a mortgage on the land in favor of one Rebecca Innis for the sum of five hundred pounds, to the interest upon which during her lifetime the grantor was entitled under the will of R. Innis, but her claim to which she renounced in favor of the grantee, by a covenant in the deed. The considerations of this conveyance have been already stated.
Such a contract would seem to repel the idea of *629 lien. If one were intended, why not alluded to when the lien in favor of R. Innis is specially reserved? The consideration is in gross for both real and personal property and no discrimination is made between the proportions due for each severally. Now there is no implied equitable lien for the purchase money of personal property sold in favor of the vendor. James v. Bird’s adm’r, 8 Leigh 510; McNeil v. Bird’s adm’r, not reported but cited in the foregoing case: and I am aware of no case in which such a lien has been declared on a sale of both real and personal property for a gross sum. That the court of chancery will enforce specific performance of such a contract or that a rent may be reserved issuing out of both on a demise of real and personal property will not help the argument. The question is what may reasonably bo supposed to have been the intention of the parties, and those principles do not serve to illustrate it. The great inconvenience and embarrassments that would follow if a lien should exist in this case tend strongly to show it could not have been intended. If a lien upon any thing, it would be a lien upon all the property sold, thus disabling the vendee from disposing of a slave or any other article except subject to this doubtful uncertain contingent lien in favor of Mrs. Byrd. For there is a contingency as to the amount depending on her continuing to reside in the family or choosing to reside elsewhere. And as to part, the use of a room and furniture and the services of a maid servant, if the covenant be broken as to these, the compensation is not in a specific sum due but in damages to be assessed by a jury. To maintain the lien here would be to encounter all the objections stated by Tucker, P. in Brawley v. Catron, 8 Leigh 522, if indeed they be not stronger in this case than in that. It is no ans-wer to say that the lien declared is for the arrears of the annuity. It cannot thus be separated *630 from the rest of the subject but must share the fate of the whole; and if no lien for the whole consideration there is none for the annuity.
Upon the whole, I feel no doubt that Mrs. Byrd was content with the personal security of Coke and that at the time of executing the instrument, neither partjr contemplated or thought of a lien. And to set it up here would be to carry the doctrine further than it has ever yet gone, which in view of the expressions of eminent judges against the policy of such a lien and the marked sense of the legislature in its total abolition by statutory enactment, I certainly am not prepared to do.
We come next to the effect of the failure to record the deed of trust until after the death of Coke.
That such a deed though unrecorded is yet good and valid as between the parties is clear from the terms of the law which have no application to such a case and was decided at an early day under a former registry law. Turner v. Stip, 1 Wash. 319; Currie v. Donald, 2 Wash. 58. A general creditor therefore coming in the lifetime of the mortgagor can assert no claim to satisfaction of his debt out of the mortgaged subject to the prejudice of the mortgagee. But it is argued that upon the death of the mortgagor in this case, the general creditors acquired such rights under the provisions of the statute making the real estate of a decedent liable to his debts or under the charge in the will of Coke for payment of his debts, as entitles them to displace the mortgagee and deprive him of the benefit of the lien for which he had contracted.
The first enquiry then is what is the interest which is thus made liable by the statute to the debts of a decedent ?
The act provides that all real estate of any person who might thereafter die as to which he might die intestate or which though he die testate shall not *631 have been by his will charged with or devised subject to the payment of debts or which might remain after satisfying the debts so charged or subject to which it was so devised, shall be assets for the payment of the decedent’s debts in the order in which the personal estate is to be applied. Code Va. ch. 131, § 3, p. 545. The estate then thus made subject is the estate of the debtor not that which he may have previously conveyed to another, nor (except subject to the charge) that on which he has created a lien for the payment of a particular debt. In the latter case creditors coming in under the statute must take the subject in the same plight and condition in which the debtor left it. Their rights in the subject cannot be enlarged and improved beyond those of the debtor to the prejudice of the' creditor who has taken the lien though he may have failed to record it. The creditor who seeks ’to assail it must come with some lien by judgment or otherwise giving him a right to charge the property specifically. That the right given by the statute constitutes no such lien, I think, is clear. The law makes real estate assets, merely, to be disposed of as personal assets ; and a creditor has no lien upon the assets. He has a right to have the -whole applied in a due course of administration, but nothing in the nature of a specific lien. Nugent v. Gifford, 1 Atk. R. 462; Mead v. Lord Orrery, 3 Atk. R. 235; per Lord Eldon, McLeod v. Drummond, 17 Ves. R. 153. See remarks of Sir Wm. Grant in Mitford v. Mitford, 9 Ves. R. 87, 100; Glason v. Morris, 10 John. R. 525, 540. See also Black v. Scott, 2 Brock. R. 325.
That the general creditors take only the estate of the debtor and in the plight and condition in which he left it, is deducible from the general tenor of the act and also from the terms of the seventh section which expressly declares that the provisions of that chapter should not affect any lien by judgment or *632 otherwise acquii’ed in the lifetime of the decedent. And there is no sufficient reason for excluding an unrecorded moi'tgage from the protection afforded by this section. It is still a lien on the mortgaged subject which a court of equity will respect and enforce, assuming the debt to be fair and honest, and there can be no reason why the general creditors having no claim to charge the subject specifically, but only the estate left by the debtor, generally, should be entitled to claim any thing more than the debtor himself had, to wit, the equity of redemption after satisfying the mortgage debt. To permit them to deprive a creditor having an equity at least equal to theirs and certainly prior in point of time of the benefit of the lien for which he had contracted would be required neither by any principle of justice nor by the policy on which the law is founded.
If therefore Coke had died intestate, it is difficult to perceive on what grounds the general creditors coming in after his death under the statute could be entitled to displace the creditors claiming under the deed of trust of the 21st of June 1848 or to subject to their debts any thing beyond the equity of redemption. The mortgage being good against the grantor and his heirs, nothing , could descend to the heir but the equity of redemption; and if he and the mortgagee were to unite in a sale of the mortgaged premises, the creditors could not make him liable at law beyond the value of such equitable interest. The act makes him answerable for the value of the assets descended, but no more, and all that descended was the mei'e equity of redemption. And equity certainly would not carry the liability further. The case of a fraudulent conveyance will not illustrate the question here. It may be true that in that case, the descent would not be broken and the whole property would be liable. For when the deed is adjudged void for *633 fraud the party has nothing to fall back upon. Very different is the case of a deed defective merely for want of having been duly recorded. Though the transfer of the legal title be arrested, the creditor has the equity of a just debt and of the stipulation with the debtor for the security of the trust deed to rely upon; and this a court of equity administering equities according to its own principles will duly respect and enforce against general creditors having no specific lien by judgment or otherwise. The parties come into the court of equity asking its aid to subject the property and they must abide by the rules and principles of that court. And although a fraudulent alienee would be treated as a mere trustee for the benefit of the creditors entitled, a creditor holding under an unrecorded mortgage to secure a bona fide debt would stand on a different footing. His equity would be at least equal to that of the creditors competing with him and he moreover stipulated for a security which they did not.
But the claim of the creditors in this case does not rest upon the right given by statute to subject the real estate of a decedent to the payment of his debts. Coke by his will which was made on the 30th of December 1849 charged his whole estate with the payment of all his debts; and it was not therefore within the terms of the third section of chapter 131, subjecting real estate to the payment of the decedent’s debts. For that section is expressly confined to the real estate as to which the party died intestate or which though he may have left a will, shall not have been charged by the will or devised subject to the payment of debts, or if so charged or devised, to what might remain after satisfaction of the debts so provided for. The devise then being for payment of debts was clearly good under the act in force at the date of the will; *634 and although generally wherever real estate is by statute made liable for payment of debts it would appear to constitute legal assets as held in Goodchild v. Ferrett, 5 Beavan’s R. 398; 2 Spence Equ. Jur. 319; yet where a testator by his will charges his real estate with his debts, the real estate so charged will be equitable assets notwithstanding the statute would have rendered it liable if there had been no such charge. Charlton v. Wright, 12 Simon’s R. 274; 2 Spence Equ. Jur. 312. But in the administration of assets of a decedent whether legal or equitable, the courts of equity recognize and enforce ají antecedent liens claims and charges, in rem, resting upon the property according to their priorities whether they are legal or equitable. 2 Lom. Dig. 119 ; Fremoult v. Dedire, 1 P. Wms. 429; Finch v. Winchelsea, 1 P. Wms. 277; 1 Sto. Eq. Jur. § 553, and cases cited in the note. And as the mortgage though unrecorded is valid against the grantor and his heirs, it constitutes such a lien as will be respected by the court of equity in administering the assets of the decedent.
The statute of wills authorizes every person to dispose by will of any estate to which he shall be entitled at his death and which if not so disposed of would devolve upon his heir &c. Code of Virginia, ch. 122, § 2, p. 516 ; and if there were no further provision on the subject, the effect of this would be to enable the devisee to take the land devised discharged from any liability to the general creditors of the testator. Hence the statute in England upon the subject of fraudulent devises and the similar provisions of our Code. But to what estate shall it be said a party was entitled at his death and what shall devolve upon his heir if not disposed of by will? Certainly not lands which the testator had conveyed to another by deed binding upon him and his heirs, in his lifetime; *635 or if the conveyance were not absolute but in the nature of a mortgage to secure a debt, nothing more than the equity of redemption. In the former case, his title has passed from him absolutely; in the latter it is only to be reinstated by himself or those claiming under him by payment of the amount due. By the devise, the testator will only be understood to intend to charge what he lawfully might charge and it will not be construed so as to pass more than he himself was entitled to. Hor can the devisee take more. He is not a purchaser for value, and can stand on no better footing than a voluntary grantee. The devise is the voluntary act of the debtor implying no contract or stipulation with the creditors whose debts are thus provided for. And the maxim non det qui non habet must apply.
In this case, Coke’s will was made before the present Code took effect, and the case therefore falls within the influence of that of 1819, Code of Va. ch. 122, § 22. By the Code of 1819 whilst it avoided fraudulent devises, devises for payment of debts were expressly saved: and the creditors here must claim as devisees whose rights are protected by the fourth section of the act of December 18, 1789 (1 R. C. 1819, p. 392). So claiming, they can only take what Coke could devise, and this is the equity of redemption in the subject covered by the deed of trust. What they must claim is an equitable interest only and the relief they must seek is through the administration of equitable assets. Black v. Scott, 2 Brock. R. 325 ; 1 Sto. Eq. Jur. § 550, 552, 553; Miller Eq. Mort. 126, (42 Law Lib. [126]; Newton v. Bennett, 1 Bro. C. C. 135; Silk v. Prime, Ibid. 138, n; Baily v. Ekins, 7 Ves. R. 319; Rutger's ex'ors v. Leroy, 4 John. Ch. R. 651; Nimmo's ex'or v. Commonwealth, 4 Hen. & Munf. 57. And this being the footing on which they must stand, *636 they cannot successfully ask the aid of a court of equity to take from a creditor having at least an equal equity with them and who has moreover stipulated for and obtained a specific lien upon the real estate of the common debtor, the preference thus intended to be secured to him.
From what has been said it may be deduced that after the death of a mortgagor it is not necessary to record the mortgage to protect the lien against general creditors. In this case in point of fact the deed of trust was recorded after the death of Coke, and there is nothing in the language of the act prohibiting the recording of a deed after the death of the grantor or restricting the right to'record to the lifetime of the grantor. When the execution of the deed is authenticated in the manner required by the law it is the duty of the court or clerk to admit it to record without enquiry whether the grantor be in life or otherwise. Nor is any good reason perceived why such recording will not suffice to bring the case within the terms of the law, and render the deed good against creditors from that time. And it may be urged that as the creditors had acquired no specific lien by judgment or otherwise in the lifetime of the grantor and as they took none either under the devise in the will or the act rendering real estate assets for payment of debts, they could not successfully assail the lien secured by the deed of trust. I do not dwell upon this view however because as I think the creditors acquired nothing in the nature of a specific lien either under the will of Coke or the statute making real estate assets, and as after Coke’s death they could acquire no lien upon his real estate, I conceive that recording the deed of trust after his death was wholly unnecessary as to them.
It remains to consider in this connection, the effect *637 of the 11th section of chapter 118 of the Code. This section provides that the words “ creditors” and “purchasers” where used in that chapter and in chapter 119, shall extend to and embrace all creditors and purchasers, who but for the deed or writing, would have had title to the property conveyed or a right to subject it to their debts. And it is insisted that creditors claiming under a devise for payment of debts or under the statute subjecting real estate, are within this description. I do not think this the correct construction of the section. It was not designed to make any change in the kind or character of the debts which would entitle creditors to assail an unrecorded deed, but to define the class of creditors as to whom if their debts were of the kind and character authorizing them to call it in question, an unrecorded deed would be void. This is apparent from the context, for the section declares that the words “creditors” and “purchasers” where they occur, are not to be restricted to the protection of creditors of and purchasers “from the grantor,” but are to embrace all who but for the deed would have had title to the subject or a right to subject it to their debts. It was intended to settle by statutory provision the question so much controverted in the cases of Pierce v. Turner, 5 Cranch’s R. 154; Land v. Jeffries, 5 Rand. 211; and Thomas v. Gaines, 1 Gratt. 347 ; and which was decided in the last named ease in conformity to the decision in Anderson v. Anderson, 2 Call 198; and overruling Pierce v. Turner and the opinions of Judges Carr Coalter and Brooke in Land v. Jeffries; but it made no change in the well settled rule which required a creditor who would assail an unrecorded deed to show that he had some lien by judgment or otherwise entitling him to charge the subject conveyed, specifically.
I think the Circuit court erred in its opinion upon *638 both of the questions which I have thus considered, and am of opinion to reverse the decree.
Allen, P. and Moncure, J. concurred in the opinion of Lee, J.
Daniel and Samuels, Js. concurred in Judge Lee’s opinion as to Mrs. Byrd’s heirs; but they dissented as to the validity of the deed of trust.
Decree reversed.