## Wytheville.

RORER'S HEIRS V. ROANOKE NATIONAL BANK AND ALS.

June 30th, 1887.

1. MARRIED WOMEN—*Deeds—Recordation—Effect.*—The deed of a married woman does not operate to pass from her any right, title or interest of any kind she may have in any estate, until her privy examination, acknowledgment and declaration as respects thereto shall have been taken and certified, as prescribed by law, and the same and the deed to which the same is annexed, or on which it is, shall have been delivered to the proper clerk *and admitted to record*, both as to her husband and herself; and when that has been done, as prescribed by Code 1873, ch. 117, §§ 4, 5, 6 and 7, then, *and not till then*, her deed operated to pass from her and her representatives all the right, title and interest of every nature which at the date of her deed she may have had in any estate thereby conveyed, as effectually as if she were at the said date an unmarried woman ; but such deed does not operate any further upon her, or her representatives, by reason of any covenant or warranty contained therein.

2. IDEM—*Unauthorized recordation.*—An unauthorized recordation is void. And if after a married woman has executed the instrument, and upon her privy examination has acknowledged that she freely executed it, and does not wish to retract it, and the same has been duly certified, the instrument has been cancelled and made of none effect, any subsequent recordation of it is unauthorized and void.

Appeal from decree of circuit court of Roanoke county, rendered April 9th, 1886, in the chancery cause wherein the Roanoke National Bank and others were complainants, and Ferdinand Rorer and his trustees, L. H. Cocke and two others, James B. Gregory and Ella, his wife, P. H. Rorer, Ferdinand Rorer, Jr., Ernest Rorer, and Eulalia Rorer (the last five of whom are the heirs at law of Mrs. Julia Rorer,

deceased, late wife of said Ferdinand Rorer) and others were defendants. The decree being unfavorable to the claims of the said heirs, they obtained an appeal and *supersedeas* to this court. Opinion states the case.

*G. W. & L. C. Hansbrough,* and *Kean & Kean,* for the appellants.

F. Rorer owned two hundred and ninety seven and a half acres of land in Roanoke county. His wife (Julia), as devisee of her father, owned an adjoining tract of two hundred and fourteen and a half acres. By deed in 1861, duly executed and acknowledged, they conveyed to M. P. Crawford both tracts, describing each and stating how each had been derived. The price was $43,000. In 1866, Crawford had paid $11,000, and being unable to pay the balance, he and Rorer agreed to cancel the sale. Rorer conveyed to Crawford a tract in Pulaski to repay what Crawford had paid him. And Crawford and wife executed and acknowledged, without any warranty, the following deed, viz:

"Whereas the said Ferdinand Rorer heretofore, on the first day of September, 1861, sold to the said Madison P. Crawford a certain tract or parcel of land lying in Roanoke county, near Big Lick depot, containing five hundred and thirteen acres, more or less, and at the same time executed, acknowledged and delivered to the said Crawford a deed of bargain and sale for the same, retaining a lien therein on said land for certain sums of purchase-money unpaid, which deed has not been admitted to record, and is supposed to be lost. And whereas the said Crawford has now resold the said tract of land to the said Rorer, and is willing to reconvey the same to him, so as to secure the legal title and save harmless the said Rorer in case the lost deed should hereafter be found and set up as a valid conveyance for the said tract of land.

" Now, therefore, in consideration of the premises and of one dollar, the said Madison P. Crawford and Mary Susan, his wife, do hereby grant, release and forever quit-claim to the said Ferdinand Rorer all their right, title, interest in and claim to the said tract of land containing five hundred and thirteen acres, more or less, as effectually and to all intents and purposes as though the same had not been con-veyed to the said Crawford by the deed aforesaid."

The object of this deed, as shown by its own language and by the evidence of both F. Rorer and M. P. Crawford, was to cancel the sale and to make of none effect the deed of 1861—that is, "to secure the legal title and save harm-less the said Rorer in case the said lost deed should after-wards be found and set up as a valid conveyance of the said tract of land." And the deed proceeded to convey to the said F. Rorer all of the right, title and interest of the said Crawford in and to the said land "as effectually and to all intents and purposes as though the same had not been conveyed to him."

The deed of 1861, though it had not been recorded, yet operated as between F. Rorer and Crawford to pass to the latter all the former's interest in the entire tract, viz: the fee simple of the two hundred and ninety-seven and a half acres and his life estate in the two hundred and fourteen and a half acres. But because it had not been recorded, it did not operate to pass out of Mrs. Rorer her fee simple of the two hundred and fourteen and a half acres or her dower right in the two hundred and ninety-seven and a half acres. In fact, it was wholly inoperative and not binding as to her. See Code 1873, ch. 117, § 7, which reads thus:

"7. When the privy examination, acknowledgment and declaration of a married woman shall have been so taken and recorded, or when the same shall have been taken and certified as aforesaid, and the writing to which such certifi-cate is annexed, or on which it is, shall have been delivered

to the proper clerk and admitted to record as to the husband as well as the wife, such writing shall operate to convey from the wife her right of dower in the real estate embraced therein, and pass from her and her representatives all right, title and interest of every nature which, at the date of such writing, she may have in any estate conveyed thereby, as effectually as if she were at the said date an unmarried woman; and such writing shall not operate any further upon the wife, or her representatives, by means of any covenant or warranty contained therein."

The revision of 1849 did not change the policy of the law, except where expressed or necessarily implied, and the above section means just what the Code of 1819 declared on this subject. (See Rev. Code, pp. 361–71.) Nor does the Code of 1819 change the meaning of the act of 1814, which for the first time guarded the wife against covenants or warranties, as was suggested by the decision in 1804, in *Nelson* v. *Harmon*, 3 Call. 394. And substantially it agrees with the act of 1792 (1 Stat. at Large, 84), and the act of 1748 (5 Hen. Stat. 408), and the act of 1734 (4 Hen. Stat. 397), and the act of 1710 (3 Hen. Stat. 517), and the act of 1703 (3 Hen. Stat. 304), and even the act of 1674 (2 Hen. Stat. 317), which was the first act on the subject in Virginia.

The result of those acts is that a married woman's deed is void unless recorded, and, of course, passes no estate or interest out of her. The act of 1792 says that her unrecorded deed "is not binding on the *feme* or her heirs." And all the subsequent acts substantially, in a more condensed form, say the same thing. The Kentucky statutes are the same as those of Virginia, and in 1849 the supreme court of that State, in *Scarborough* v. *Watkins*, 9 B. Monroe, 540, said: "The recording of the deed of a *feme covert* is necessary, not merely to make the deed valid against subsequent creditors and purchasers, but to pass the title out of the grantor." "The execution of a deed without

acknowledgment by a married woman is a nullity." So says Tyler on Coverture, 505, and the acknowledgment without admission to record gives the deed no life, because the same statute which requires the one also requires the other; and as she can, after signing, sealing and delivering the deed to the grantee, *retract* it, so she can recall it at any time before it has been recorded, for it is an incomplete transaction. Admission to record without her assent— "unauthorized recordation"—is void. (1 Tucker, 268.) Her assent may be presumed after acknowledgment; but the presumption is not conclusive, and may be rebutted even by indirect evidence, such as the grantee's agreement to cancel the deed, or any such change of circumstances as would furnish the conclusion that she did not assent to its recordation. As the record shows, the deed of 1861 was never admitted to record until eighteenth of October, 1875, only a few weeks before Mrs. Rorer's death. It was recorded—it does not appear at whose instance or by what authority. It was recorded after the agreement to cancel it was made by the deed of 1866, and after the sale had been abrogated and Crawford had executed his deed for the purpose, as it is therein declared, of making the situation of the several parties to the deed of 1861 just the same as though that deed had never conveyed to him the said land. Under such circumstances, does it comport with the spirit of the acts aforesaid, that the recordation of Mrs. Rorer's deed in 1875 should have the effect of vitalizing her deed of 1861 ?

The deed of 1866 makes no reference to Mrs. Rorer and her conveyance of said land to Crawford. It only speaks of F. Rorer's conveyance, and it reconveys to him what he had conveyed to Crawford. Mrs. Rorer's interest in the land had not passed out of her when the deed of 1866 was executed. Crawford was then vested only with F. Rorer's interest therein, and that interest he reconveyed to F.

Rorer. What he had not, of course he could not, and did not, transfer back to F. Rorer. Nor did he pretend to do so. His deed contains no allusion to Mrs. Rorer or to her interest having been vested in him by that deed. Presumably, both he and F. Rorer, and Mr. Johnson, who wrote the deed of 1886, were aware that her estate in said tract had not passed out of her and vested in Crawford by virtue of her deed of 1861, which had never been recorded. And hence the silence of the deed of 1866 as to her.

However, if notwithstanding these extraordinary circumstances, the cancellation of the sale, the restoration of the *status quo ante,* and the manifest intention of all the parties never to give vitality to the deed of 1861 by having it recorded, and to set it up as a valid conveyance, it should be contended that its recordation in 1875 did give it vitality and make it pass Mrs. Rorer's interest, its effect must have been to pass out of her to Crawford, her grantee, that interest—that is, in the language of the said seventh section, "all right, title and interest of every nature which, at the date of such writing, she may have had in the land thereby conveyed." This "right, title and interest" had not vested in Crawford when he executed his deed of 1866 to F. Rorer. Hence it was not passed to F. Rorer, even had it been so intended. And if, by the recordation in 1875, Crawford subsequently acquired that "right, title and interest," the same did not enure to F. Rorer by virtue of the deed of 1865, as that deed contained no warranty of title. This court, per Carr, J., in *Doswell* v. *Buchanan,* 3 Leigh, 407, said: "The counsel for the appellees insisted, in the argument, that though Hopkins had no title when he conveyed to Buchanan's trustees, yet, as he afterwards obtained it, he and his alienee were estopped from contradicting the deed. In respect to this, I shall only remark that this technicality is met and neutralized by another, namely, that the deed contains no clause of warranty. A deed of

bargain and sale, like a release, passes no title which the bargainer had not at the time; yet if there be a warranty annexed, it will bar.   For, albeit, (says Coke, Co. Litt. 265, b,) the release cannot bar the right, &c., yet the warranty may rebut, and bar him and his heirs of a future right that was not in him at the time, and the reason wherefore a warranty, which is a covenant real, should bar a future right is for avoiding a circuity of action." *Burtners* v. *Keran,* 24 Gratt. 42; *Duchess of Kingston's case,* 2 Smith's L. C. 639–41–3; Field's Briefs, title Estoppel, 208, where it is said upon many unquestionable authorities: "The true doctrine is, that where a man who has no title to land conveys it to another with warranty, and afterwards acquires title thereto, that subsequently acquired title enures to his prior grantee; but where a man who has no title to land conveys it without warranty to another, and afterwards acquires title thereto, the subsequently acquired title does not enure to his prior grantee, but remains for his own benefit."

Therefore, F. Rorer acquired no title to Mrs. Rorer's interest in the said tract of land, either by the deed of 1866, because Crawford then had no title thereto,—the deed of 1861 being then unrecorded,—or by enurement to him of the title subsequently acquired by Crawford by the record of the deed in 1875, as that deed contained no warranty of title.   But Crawford makes no claim, and says the original sale was cancelled, and things returned as they were before the deed of 1861.

A married woman's deed is, we repeat, void unless recorded.   When recorded, it is vitalized.   It operates then to convey what estate she had at the date of the execution of the deed.   But it does not relate back to that date, and become in force and operation from then till recorded.   It is the admission to record which imparts life to it from that time—that is, when the recordation has been duly

authorized. But recordation gives it no retrospective operation; this is just as when her deed has been signed, sealed and delivered without acknowledgment, it has no efficacy; and, when subsequently acknowledged by her, its efficacy does not relate back, but begins with the acknowledgment and recordation. Relation back cannot be applied to a void act. Such an act will not be made good by relation. See *Jackson* v *Ramsay*, 15 Amer. Dec. 247–8, note.

But, if by means of recording the deed.,of 1861 as late as 1875, Mrs. Rorer's estate was vested in Crawford, he certainly holds only the legal title in trust for the appellants as the heirs of Mrs. Rorer. Where by any means the legal title to land becomes vested in one person, whilst under the circumstances of the case others are equitably the beneficial owners, he will be treated in a court of equity as holding that legal title as trustee for those who are the beneficial owners. *Floyd* v *Harding*, 28 Gratt. 407. Such a trust is one which, without being expressed, is deducible from the nature of the transaction as a matter of intent, or which is superinduced upon the transaction by the operation of law, as a matter of equity, independently of the particular intention of the parties. 5 Field's Briefs, title Trusts, § 632; Hill on Trustees, 144; *Smith* v. *Profitt*, 82 Va.

And now here, if after the cancellation of the sale and the restoration of all parties to their original rights in the said land as was designed by his deed of 1866, the legal title to Mrs. Rorer's estate was vested in Crawford by the wrongful admission in 1875 of her deed of 1861 to record, then it cannot be doubted that equitably the beneficial ownership of the said estate is in the appellants, and Crawford should be treated as merely a trustee for them.

There can scarcely be a shadow of a legal claim in F. Rorer, or in the appellees who claim under him, to the said two hundred and fourteen and a half acres of land.

The counsel for the appellee, E. G. McClanahan, present in their brief a lengthy account of the common law proceeding of fine and recovery in England, and of several English decisions as to the effect thereof, forgetful of the fact that in Virginia, as the act of 1674 (2 Hen. Stat. 317) says, "*wee have noe ffines and recoveries.*" And in another part of their brief they laboriously controvert the application of the term "quit-claim deed" to the deed of 1861. Verily, it is that, and nothing more. It surrenders, without covenant of warranty, to F. Rorer what estate he had in the tract of land conveyed to him at the date of his deed in 1866.

And they say also that "the acknowledgment and the recordation is evidential of what she has done, rather than potential in passing her estate." But what say the old statutes?

" Unless recorded, such deed is not binding on the *feme* and her representatives." What says the Code of 1849? " When recorded, such deed shall operate to pass the *feme's* estate from her and her representatives." Their whole argument is based on the idea that the *feme's* deed creates "a potential estate" in the grantee before recordation; whereas, until recordation, it is entirely inoperative and null. At common law, she could make no deed. The statute is at once the source and the limitation of her authority to make a deed; and to that alone we must look to ascertain its effects, and when and upon what conditions it takes effect. Without fulfillment of all the prescribed preliminaries, it has no effect, and conveys no estate, potential or actual.

*Burks & Burks*, *Penn & Cocke*, and *D. B. Strouse*, for the appellees.

The deed of September 5, 1861, from Ferdinand Rorer and wife to Madison P. Crawford, purporting to convey

five hundred and thirteen acres of land, a part of which (two hundred and fourteen and a quarter acres) was the land of the wife, is a perfect deed of conveyance in its terms. It was signed by both husband and wife. The acknowledgment, privy examination, and declaration of wife, as party to the deed, were taken and certified in the mode prescribed by law. The deed and certificates were admitted to record in conformity to the statute. The effect was, in the very terms of the statute (Code of 1873, p. 907, § 7), " to convey from the wife her right of dower in the real estate [of her husband] embraced therein [in the deed] and pass from her and her representatives all right, title, and interest of every nature which at the date of such writing [deed] she may have [had] in any estate conveyed thereby, as effectually as if she were at the said date an unmarried woman." " Convey "—" pass "—to whom? Plainly and necessarily to the grantee, his heirs, or assigns.

It may be conceded, that to " convey " or " pass " the wife's interest, under our statute law, the deed or writing must be recorded. In this case the deed was recorded. It was admitted to record October 18, 1875, Mrs. Rorer was then living. It is admitted by the appellants, in the record, that she died November 11, 1875. If the admission to record had been after her death, the result would have been the same. *McCandlish* v. *Keen,* 13 Gratt. 636.

But it is contended in the petition for appeal, with much apparent earnestness, that at the time the deed was admitted to record it had been wholly superseded by the deed of December 3, 1866,—that the intention and effect of the last named deed was to " cancel "—" rescind "—the former contract, and restore the *status quo* in all respects, and thus leave Mrs. Rorer the owner in fee, as before, of the two hundred and fourteen and a quarter acres of land.

This we controvert. We invite the closest scrutiny of the deed of 1866. By virtue of the deed of 1861, Crawford

had become the owner (subject to the lien reserved for the purchase-money) of the whole five hundred and thirteen acres of land—absolutely of Rorer's own interest and potentially of his wife's. By "potentially," we mean that he, his heirs, or assigns had an interest coupled with the power to make that interest effectual by putting the deed on record at any time, so as to make it operative to "convey" and "pass" all the wife's interest in the land embraced in the deed.

Now, the object of the deed of 1866 was not to transfer Crawford's interest under the deed of 1861 distributively to Rorer and his wife, so that they should be severally reinvested with their respective estates as they held them at the time the deed of 1861 was made, but to transfer the whole to Rorer, and to him only—to "grant, and forever quit-claim to the said Ferdinand Rorer all their [Crawford's and wife's] right, title, interest in and claim to the said tract of land containing five hundred and thirteen acres, more or less, as effectually and to all intents and purposes as though the same had not been conveyed to the said Crawford by the deed aforesaid." The use of these last words, "as though the same had not been conveyed," etc., was not intended to indicate the persons to take and hold under the deed. That had already been declared in explicit terms—the conveyance was to Ferdinand Rorer alone—but the sole object in their use was to show the intention of a complete divestiture of all the right, title, interest and claim of Crawford and wife.

If it had been intended that the *status quo* as to Rorer's wife as well as himself should be completely restored, the grant, release, and quit-claim would have been of their respective lands to each of them. Such an object could not have been as well effected, if it could have been effected at all, in any other way. Instead of that, as appears by the deed, the conveyance is to Rorer alone.

The fact is, the transaction was a resale to Rorer. It is so recited in the deed—"whereas the said Crawford has now resold the said tract of land to the said Rorer, and is willing to reconvey the same to him, so as to secure the legal title and save harmless the said Rorer in case the said lost deed be found and set up as a valid conveyance of the said tract of land—." The resale was of the entire tract. The deed shows this. It embraced, therefore, not only Rorer's original interest, but his wife's also. In the deed of 1861 the whole purchase-money was made payable to him alone, the lien for its payment was reserved to him alone, and the resale and reconveyance were to him alone.

What, then, was the effect of the deed of 1866? It operated instanter as a conveyance to Rorer of all the right, title, interest and claim, legal and equitable, of Crawford and wife to the entire tract of land. It is admitted by the appellants that it transferred to Rorer the legal title to the land (some three hundred acres) which was conveyed by him to Crawford by the deed of 1861; but they deny that it transferred or affected the title to the two hundred and fourteen and a quarter acres (Mrs. Rorer's part of the tract), except to the extent of her husband's life estate in it. As to this (the two hundred and fourteen and a quarter acres), they say that at the date of the deed Crawford had no title to it, because the deed of 1861, under which he claimed, had not then been admitted to record, was then superseded, and the title of Mrs. Rorer was not, therefore, divested, but abided in her and descended to her heirs.

Conceding that it was necessary that the deed of 1861 should be admitted to record in order, under our statute, to "convey" and "pass" the estate of Mrs. Rorer, it by no means follows that Crawford (the grantee) was therefore devoid of interest in that estate. True, he had not then acquired the *legal title*, but he was certainly possessed of an interest. He had not only paid about $11,000 of the

purchase money of the land he had bought (a proportionate part of which was for Mrs. Rorer's part of the land), but he was *potentially* the owner of the whole of Mrs. Rorer's interest, subject to the lien reserved for the purchase-money. Mrs. Rorer had, in conjunction with her husband, signed the deed conveying the property. All the requirements of the law, as to acknowledgment, privy examination and certificates, had been complied with. The deed had been delivered; neither she nor her husband could revoke it; it only remained to be recorded to perfect the title as to her. In that state of the case, Crawford, by the deed of 1866, for a valuable consideration, conveyed to Rorer *all* the right, title, interest and claim which he (Crawford) had. His potential ownership of Mrs. Rorer's land passed under that deed, and as soon as the deed of 1861 was admitted to record, that ownership became an actual ownership in point of law. Whether a court of equity would have set up the lost deed as against Mrs. Rorer or her heirs, if it had never been found and recorded, it is not necessary in this case to consider, as the deed *was* found and *was* admitted to record.

The object of the deed of 1866 was to "secure" to Rorer alone the "legal title" to the whole tract of land containing five hundred and thirteen acres, and embracing Mrs. Rorer's part This is apparent on the face of the deed. The effect of the deed was *instanter* and *per se* to convey to Rorer that title, so far as it was vested in Crawford, and the equitable right to perfect it so far as Crawford could have done. It was perfected, as to Mrs. Rorer, by the recordation of the deed of 1861.

It may be that the legal title to the two hundred and fourteen and a quarter acres did not pass, as the recordation of the deed was necessary to that end, and the deed had not then been recorded. But this is wholly immaterial. It was clearly the intention of the parties that it should pass,

and the intention is apparent on the face of the deed. As soon, however, as the deed was admitted to record, the legal title was vested either in Rorer, as the circuit court seemed to think, or in Crawford, as, we think, was probably the case. If in Crawford, it was clothed with a trust for the benefit of Rorer, to whom it was intended to be conveyed by the deed of 1866. So that, in either view, Rorer became the absolute beneficial owner of the estate, and it passed under the deed to his trustees.

It was perfectly competent for Crawford to sell Mrs. Rorer's interest in the land before he acquired the title to it. The deed, in such case, would not convey the title at law, because he did not have it, but it would bind the land in equity as soon as the title was acquired, and he would be deemed and treated as a trustee for his vendee. And this is on the familiar principle that equity looks upon that as done which has been agreed to be done. It is upon this principle that mortgages, deeds of trust, and absolute conveyances of expectances and property to be acquired in future, when upon valuable consideration, are upheld and made effectual in equity. The books abound in cases of this sort. The subject is treated at some length in 3 Pomeroy's Eq. Juris. §§ 1, 2, 3, pp. 280–308. See particularly § 3, p. 297, *et seq*.

The well considered case of *Turnbull* v. *First National Bank of Alexandria*, 32 Gratt. 695, is an instance of the application of the principle.

The argument in the petition for appeal, that if Rorer acquired his wife's land under the deed from Crawford, he took it in trust for her, is not supported, we submit, by anything in the record. There was nothing in the transaction showing that any trust was contemplated, and the conduct of the parties repels any such idea. Rorer always dealt with the land as his own, and his children never asserted any claim until prompted by their father to do so,

after he had conveyed the property to pay his debts.   Certainly no trust is declared in the deed of conveyance to Rorer, and nothing contained therein from which a trust can be justly implied.   If there was any trust, the trustees did not have notice of it, and they are purchasers for value. See the Virginia cases cited in *Williams* v. *Lord & Robinson*, 75 Va. 768, and *Rhea* v *Preston*, Id. 768.

Nothing has been said in this note as to so much of the decree as declares the deed of trust valid, as the attacking creditors have not appealed.   Nor have we noticed any question raised by the demurrer to the bill, as the demurrer was withdrawn at the hearing.

RICHARDSON, J., delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Roanoke county, rendered on the ninth of April, 1886, in the chancery cause then therein pending, wherein the Roanoke National Bank, Farmers National Bank of Salem, the People's National Bank of Lynchburg, George P. Tayloe, assignee of M. M. Rogers, Peter Nininger and Margaret M. Johnson were complainants, and the appellants, James B. Gregory and Ella, his wife, P. H. Rorer, Ernest Rorer, Ferdinand Rorer, Jr , and Eulalia Rorer, and others, creditors of Ferdinand Rorer, Sr., the father of said appellants, except said James B. Gregory, were defendants.

The suit grew out of the following transactions : Ferdinand Rorer, Sr., who was possessed of a large and very valuable real estate in and near the city of Roanoke, on the twenty-eighth of November, 1884, executed a deed of trust by which he conveyed to Samuel G. Williams, M. M. Rogers and Lucien H. Cocke all his real estate lying in the county of Roanoke, and in and near the city of Roanoke, in trust to secure his very numerous creditors, whose debts in the aggregate amounted to a very large sum, probably

exceeding by many thousands of dollars the value of the estate thus conveyed. Said Rorer had been for many years regarded, and was in fact, a wealthy man, but at the time of making this conveyance in trust had become insolvent.

Shortly after the execution of this trust deed, which provided for certain preferences among his creditors, this suit was brought by the aforesaid parties plaintiff against said Rorer, Sr., the trustees in said deed, and E. G. Mc-Clanahan, and many others named and secured as creditors in said deed, and also against the appellants, who, except one as aforesaid, are the children of Mrs. Julia A. Rorer by said Ferdinand Rorer, Sr. The main object of the bill, as appears on its face, was to impeach and set aside said trust deed as fraudulent and void, because of certain provisions therein contained, which rendered it fraudulent on its face; and also to obtain for the plaintiffs priority over creditors to whom preference had been given by said deed. A further object of the bill was to make the issue in which alone the appellants were and are concerned. That question arises thus: Patterson Hannah, the father of Julia A., wife of Ferdinand Rorer, Sr., and mother of the appellants except said J. B. Gregory, died about the year 1853, having made his last will, dated October 27th, 1850, by which he provided, after payment of debts and legacies, that one-third of his estate, real and personal, should be assigned to his wife for life or widowhood, and the other two-thirds, including the remainder in the widow's share, should be equally divided between his two daughters, M. J. Harvey and the said Julia A. Rorer, their respective husbands to have the beneficial enjoyment of their wives' estates (legacies) for their lives.

In pursuance of this devise, partition of the lands of the testator was made, and 214¼ acres, adjoining a tract of 297½ acres, which belonged to said Ferdinand Rorer in his own right in fee, and on which he resided, was allotted to him

and his said wife, Julia A., as her part of her said father's real estate. On these lands thus brought together, and making one plantation of .511¾ acres, said Rorer and wife continued to live together until 1861, when he (Rorer) entered into a contract with Madison P. Crawford for the sale to the latter of the entire tract of 511¾ acres for the sum of $43,498.75, and a deed purporting to convey the same to said Crawford was prepared, dated fifteenth September, 1861, acknowledged by said Rorer and wife and delivered to said Crawford, who was put in possession of the lands therein described ; but *said Crawford never put said deed to record.*

Crawford remained in possession until after the war, having made certain payments on account of the purchase money ; and said deed was lost or mislaid without having been recorded. Changes incident to the war rendered Crawford unable to pay the purchase-money remaining due, and caused him and Rorer to come together and agree to cancel the transaction and contract of sale evidenced by said *unrecorded deed* of September 15th, 1861, and by a deed from Crawford and wife to Ferdinand Rorer, dated third of December, 1866, duly acknowledged on the next day, the said deed of September 15th, 1861, *was cancelled.* But the deed of 1866 was not recorded until 1875, at which time it is claimed that the deed of 1861 was recorded. In adjustment of this matter, Rorer conveyed to Crawford a tract of land in Pulaski county, which, at the agreed price per acre, was equal to the partial payments which Crawford had made on the $43,498.75, the purchase price of the land embraced in the said deed of September 15th, 1861. And inasmuch as one J. B. Harding had recovered a large judgment against Crawford while he was in possession of the land aforesaid bought by him of Rorer and wife, which judgment they apprehended might be a cause of trouble, by reason of the partial payments made by Crawford to

Rorer on said last named lands, he (Crawford) to indemnify Rorer against said Harding judgment, executed a trust deed on said Pulaski land.

The said deed of cancellation of the purchase of 1861 was drawn in the absence of the deed evidencing that purchase, because that deed was lost, and it is referred to as *lost* in the deed of cancellation. The deed of cancellation recites that on *September 1st*, 1861, Rorer had sold to Crawford a tract of land near Big Lick depot containing 513 acres, more or less, and at same time had executed, acknowledged and delivered to Crawford a deed for same, "which deed has not been admitted to record and is supposed to be lost," and reciting that Crawford has resold said land to Rorer, and wishes to reconvey to him, so as to secure the legal title and save harmless the said Rorer "in case the said lost deed *should hereafter be found and set up as a valid conveyance*, in consideration of the premises and of one dollar, said Crawford and wife grant, release, and forever quit-claim to the said Ferdinand Rorer all their right, title, interest in, and claim to the said tract of land, containing 513 acres, more or less, as *effectually and to all intents and purposes as though the same had not been conveyed to the said Crawford by the deed aforesaid.*"

Mrs. Rorer died in 1875. At the time of these transactions the appellants, the children of Mrs Rorer, were not all born, and those who were in being were of tender years. Rorer and his family come back into the possession of the estate embraced in the deed of September, 1861, after and in consequence of the deed of renunciation and quit-claim aforesaid of December 3d, 1866, from Crawford and wife to Rorer; and it seems that neither Mrs. Rorer nor her children knew of these transactions, or that Mrs. Rorer's inheritance was involved in them, until said F. Rorer had become insolvent and executed the deed of trust aforesaid.

He then informed said children, and it was the first information they had that said 214¼ acres, part of the tract embraced in said deed from him and wife to Crawford of September, 1861, was their mother's inheritance, in which he had only a life estate, and as to which his said trust deed, which embraced all his property, was construed by parties interested to convey not merely his life estate, but the fee simple. Upon receiving this information, some of the adult appellants promptly notified the trustees in said deed of trust of their rights, as heirs of their mother, to the reversion, after the expiration of said F. Rorer's life estate, in the said 214¼ acres devised to her as aforesaid. Hence, in part, this suit was brought; and in the bill the plaintiffs allege that said F. Rorer was, in fact and in law, the owner in fee of said 214¼ acres allotted to Mrs. Rorer from her father's estate.

Depositions were taken, the cause matured, and at the April term, 1886, the cause was heard, when the decree complained of was made. By said decree the circuit court sustained the validity of F. Rorer's said trust deed against the assault of the plaintiffs, and reject the claim of the defendants, who are the appellants here, and who, except said J. B. Gregory, are the children and heirs at law of Mrs. Rorer; sustains certain exceptions to depositions taken on behalf of said appellants, explaining the circumstances under which the transactions above referred to were had; and, among other things, decreed "that the deed from F. Rorer and wife, dated September 5th, 1861, conveyed to M. P. Crawford the legal title to all the land described in said deed, subject alone to the vendor's lien, as therein contained, and that by the deed from Crawford to Rorer, dated December 3d, 1866, the legal title of said land was then conveyed to F. Rorer, and that after that F. Rorer had the fee simple title to said land, and that the children of Mrs. Julia A. Rorer have no legal or equitable title to or interest

in said land, or any part thereof, which they derive from her." From this decree the plaintiffs below did not appeal. The case is here solely on the appeal applied for by and granted to the defendants below, the children of Mrs. Rorer, and said J. B. Gregory, who intermarried with one of them.

Preliminary to the consideration of the only question really presented by the record, it becomes necessary to pass upon the right of the plaintiffs below, who did not appeal, to be heard, and to have the decision of this court touching the validity of F. Rorer's said trust-deed, and to resist the decree below, not only in that respect, but also to resist the claim of the appellants.

Under the ninth rule of this court the plaintiffs below appeared at bar, by counsel, at the hearing here, and insisted upon their right to be heard; and, out of abundant caution, they were permitted to be heard in argument. However, on mature consideration, it is clear that they were not entitled to be so heard, and that this court, under the settled law, cannot pass upon the validity of said trust deed, the question in which alone they were primarily interested. The rule is, that where the parties stand upon distinct and unconnected grounds—when their rights are separate, and not equally affected by the same decree or judgment, then the appeal of one will not bring up for adjudication the rights or claims of the other. *Walker's Ex'or* v. *Page,* 21 Gratt. 636, and authorities cited. The appellants here stand upon grounds entirely distinct from that occupied by the plaintiffs below. They are not equally affected with said plaintiffs by the decree appealed from. In fact they are in no way concerned with the validity of said trust deed, which was the question of first importance to the plaintiffs below, who did not appeal from the decree holding said deed to be valid; on the contrary, the appellants do not question Ferdinand Rorer's life estate in Mrs.

Rorer's maiden land, or its liability to his debts, but con cede both, and claim the reversion in fee after the expiration of said life estate. On the other hand, the plaintiffs below have no interest in resisting the claim of the appellants, except in the event of a reversal of so much of the decree of the court below as holds the trust deed valid. The appellants in that respect do not complain, and are not in any way affected by the decree in that particular. Not having appealed, the plaintiffs below stand precluded, and we decline to entertain them.

Then, the real question here presented for decision, and arising out of the transactions above stated, turns on the effect of a married woman's deed before recordation, and the right to record such deed under the circumstances stated. We are clearly of opinion that the decree complained of, in so far as it rejects the claim of the defendants below, the children of Mrs. Rorer, who, with said J. B. Gregory, are the appellants here, is palpably erroneous, and in the teeth of § 7, ch. 117 of the Code of 1873. By this section it is declared : " When the privy examination, acknowledgment and declaration of a married woman shall have been so taken and recorded, or when the same shall have been taken and certified as aforesaid, and the writing to which such certificate is annexed, or on which it is, shall have been delivered to the proper clerk and admitted to record as to the husband as well as the wife, such writing shall operate to convey from the wife her right of dower in the real estate embraced therein, and pass from her and her representatives all right, title and interest of every nature which at the date of such writing she may have in any estate conveyed thereby, as effectually as if she were at the said date an unmarried woman ; and such writing shall *not* operate any further upon the wife, or her representatives, by reason of any covenant or warranty contained therein."

By the very terms of this section, about the meaning of which there can be no two opinions, the deed of a married woman, to be operative and valid for any purpose, must be armed with and have the concurrent sanction of each and every requirement of the statute, or else no title passes thereby. Not only must the deed of a married woman be signed, sealed and delivered, but it must also be acknowledged, with privy examination and her declaration, all of which must clearly appear and be duly certified, and then be *actually* "admitted to record, *as to the husband as well as the wife"*; and nothing less than the full and complete concurrent testimony of all these statutory requirements, duly certified, will operate to pass her title from her; and this, whether it be her contingent right of dower, or other interest in or title to the property embraced in the deed. And when all that is required by the statute is done and completed, the operation of a married woman's deed is so restricted as to convey only her *interest*, and not to operate any further upon her or *her representatives* by reason of any *covenant* or warranty therein contained. She and her heirs are bound by no covenant nor subject to any estoppel by reason of such deed.

It is thus perfectly clear that the deed of a married woman, unrecorded, is on a wholly different footing from that of any other person. It is, therefore, obvious that *McCandlish* v. *Keen,* 13 Gratt. 615, and similar cases, have no application to the question in hand. *McCandlish* v. *Keen, supra,* was the case of a deed of trust executed by a man, and the deed, as between the parties, was valid and binding without recordation, no specific liens having been acquired; and at that time creditors without specific liens could not attack a deed of trust. The deed executed and delivered in that case was a complete paper. There is no analogy between that case and this.

The deed of September 15th, 1861, was a conveyance

from F. Rorer and wife to M. P. Crawford; and of the land embraced therein, 297½ acres was owned by said Rorer in fee, and the residue, 214¼ acres, was the maiden land of his wife, Mrs. Julia A. Rorer, devised to her by her father. As to so much of the land as was thus owned by Rorer, the deed of September 15th, 1861, was valid and binding as between Rorer and Crawford. Not so, however, as between Mrs. Rorer and Crawford; for, by reason of the loss and non-recordation of the deed, it was lifeless and invalid, and nothing passed thereby from her to Crawford.

Five years subsequent to the deed of September 15th, 1861, to-wit, on the third of December, 1866, when the first named deed was unrecorded, and when it was lost and could not be recorded, Crawford, the grantee therein, makes to Rorer a deed of renunciation and quit-claim in this language:

"Whereas the said Ferdinand Rorer heretofore, on the first day of September, 1861, sold to the said Madison P. Crawford a certain tract or parcel of land lying in Roanoke county near Big Lick depot, containing 513 acres, more or less, and at the same time executed, acknowledged and delivered to the said Crawford a deed of bargain and sale for the same, retaining therein a lien on the said land for certain sums of purchase-money unpaid, *which deed has not been admitted to record and is supposed to be lost.* And whereas the said Crawford has now resold the said tract of land to the said Rorer, and is willing to reconvey the same to him, so as *to secure the legal title* and save harmless the said Rorer *in case the said lost deed should hereafter be found and* SET UP AS A VALID CONVEYANCE *for the said tract* of land. Now, therefore, in consideration of the premises and of one dollar, the said Madison P. Crawford and Mary Susan, his wife, do hereby grant, release and forever quit-claim to the said Ferdinand Rorer all their right, title, interest in, and claim to the said tract of

land containing 513 acres, more or less, *as effectually and to all intents and purposes as though the same had not been conveyed to the said Crawford by the deed aforesaid*"

Can there be any doubt as to what was intended by or what is the effect of this deed? We think not. What, we ask, would have been the state of things if Mrs. Rorer had never signed, acknowledged and delivered the deed of September 15th, 1861, or, in other words, if she had stood aloof and refused to join therein? The complete answer is, that the situation would be precisely what her children, the appellants, here claim it to be. Her *status*, as respects the title to her real estate, would have remained unchanged, and at her death, intestate, her children would take by descent. And to put them in precisely the same attitude they would have occupied had their mother never joined in the deed of September 15th, 1861, was doubtless the object, and is, beyond question, the effect of the deed of renunciation and quit-claim from Crawford and wife to Rorer of December 3d, 1866; for, after reciting in the pre amble the deed of September, 1861, and admitting its non-recordation and loss—after setting forth the resale and willingness of Crawford to reconvey to Rorer, so as to secure *the legal title* and *save Rorer harmless*, in case the lost deed should thereafter be found and *set up as a valid conveyance*—the deed, in the granting part, proceeds to convey by these words: "do hereby grant, release and forever quit-claim to the said Ferdinand Rorer all their right, title, interest in and claim to the said tract of land," &c.; and then, as if to make assurance doubly sure, and to give unequivocal and unmistakable expression to the real intention and purpose of the parties, resort is had to the superadded words, "*as effectually and to all intents and purposes as though the same had not* been conveyed to the said Crawford by the deed aforesaid."

Now, what was it, *the legal title* to which Crawford proposed to secure *to Rorer* by this quit-claim deed? Obviously the land embraced in the deed of 1861, which theretofore, belonged to Rorer, and not the land therein embraced which was the maiden land of Mrs. Rorer; for, as to the latter, the deed of 1861 (for want of recordation) was a nullity and passed no title from Mrs. Rorer to Crawford, and, therefore, the word "grant" employed in the deed of 1866 was inoperative as to Mrs. Rorer's land, though effectual as to Rorer and his land, because, as between him and Crawford, and as respected the land of Rorer, the deed of 1861 was valid and binding, and Crawford had acquired thereby something that he *could reconvey*—could *grant*—to Rorer. In fact, the deed of release and quit claim plainly manifests on its face a consciousness on the part of Crawford that, by reason of the failure to record the deed of 1861, he had acquired no title as to Mrs. Rorer's land.

Men are presumed to contract in reference to, and with knowledge of, the law in force at the time of the contract. Knowing the law with respect to conveyances of married women, and knowing he had acquired no title to Mrs. Rorer's land, and that he could acquire none until the deed of 1861 was actually and duly admitted to record as to her husband as well as to her, may readily explain why, in the deed of 1866, the grantor, Crawford, made no reference to Mrs. Rorer as a party to the deed of 1861, and why he used the word "grant," which was effectual as to Rorer, but inoperative as to Mrs. Rorer, and why, too, out of abundant caution, the words of release and quit claim were added, with the superaddition of the declaration that the release was to be as effectual, "to *all* intents and purposes, as though the deed of 1861 had never been made; thus declaring, in the most comprehensive and unequivocal terms, not only the complete cancellation of the transaction evidenced by the deed of 1861, but with prudent forethought

guarding against any possible attempt to misuse it in the event it should be afterwards found, and at the same time demonstrating the real character of the transaction to be to put all the parties to that transaction in *statu quo.* The deed of 1861 thus ceased to exist, and no power on earth could thereafter give it vitality. This interpretation is con-sistent with reason and the rights of the parties respect-ively, and it gives legitimate, operative effect to every feature and word contained in said deed of release and quit-claim.

It is, indeed, too plain for argument, that at the date of the deed of cancellation the deed of 1861 from Rorer and wife to Crawford was, by reason of its not having been admitted to record, inoperative and void as to Mrs. Rorer, and that her title had not then passed thereby; and being then wiped out of existence, her title could not thereafter pass by a dead deed. Having thus died a natural, legal death, by no means known to the law could the breath of life be again breathed into it. But notwithstanding all the precautions taken to guard against any possible attempt at the misuse of this lost and unrecorded deed, in the event it should be afterwards found and attempted to be set up as valid, it was in some mysterious way not disclosed by the record formally spread upon the deed books as a re-corded deed, in 1875—just a few days before Mrs. Rorer's death, fourteen years subsequent to its date, and nearly nine years after its complete annulment by the deed of December 3d, 1866. This attempted recordation—or more properly speaking, this mere transcription—of a lost, un recorded, cancelled and abandoned paper on the deed-book nine years after what it was originally designed to accom-plish had been annulled, set aside and undone, was but a wicked attempt, by whomsoever made, at the perpetration of a most flagitious fraud, but one that can in no way even tend to reanimate the cancelled deed; least of all can it

serve to accomplish the dark design of diverting Mrs. Rorer's title from her children to her husband, and especially as she could not have conveyed to him if she had attempted to do so. The spreading of this cancelled, sponged-out and dead deed upon the record-book imparted to it no life—no validity for any purpose whatever; it stands there as if the act of cancellation were written across its face, and is not worth the paper misused in the pretended act of recordation—is utterly worthless as respects Mrs. Rorer's title, or that of her children, who claim by inheritance from her.

It is equally clear that by the deed of 1866 it was the intention of the parties to restore Rorer to his fee-simple estate in the 297½ acres theretofore owned by him and conveyed to Crawford by the deed of 1861, and to his life estate in Mrs. Rorer's said 214¼ acres, which was also embraced in said last-named deed ; and such was really the only legal effect thereof. But, though unnecessary as to Mrs. Rorer, the deed of 1861 being inoperative and void as to her until recorded, and the deed being then lost and unrecorded, it was yet the purpose to show a complete wiping out of the transaction of 1861; hence the extra precaution was taken to make the deed of 1866 broadly and strongly express a complete renunciation of all claim under the previous deed of 1861. Thus the parties were restored to their rights as they existed prior to the last named deed, and as effectually so as if that deed had never been made ; Crawford taking from Rorer the Pulaski land for· the $10,744.20 which he had paid on the land purchased in 1861, and Rorer surrendering Crawford's bonds for the residue of said purchase price. The transaction of 1861 being thus adjusted and cancelled, and Mrs. Rorer having died intestate, her title to said 214¼ acres passed unimpaired by descent to her said children, and the said land is theirs, subject only to the life estate ·therein of their father, the

said Ferdinand Rorer, Sr.   Such is the conclusion which
is plainly dictated by the very terms of the statute with
respect to the conveyances of unmarried women.

But there is another view which clearly precludes all
idea of validity in the pretended recordation of the deed
of 1861, many years after its date, and even after its can-
cellation.   The deed of 1866 (the deed of cancellation,
release and quit-claim *to Rorer*) does not refer to Mrs.
Rorer as a party to the deed of 1861, or in any other way,
and, by evident oversight, refers to the last-named deed as
made by F. Rorer, dated first of September, 1861, when it
should have been referred to as the deed of *Rorer and
wife*, dated *fifth September*, 1861.   But there is no question
as to this.   It was a very natural mistake, considering that
the deed of 1866 was written necessarily in the absence of
the deed of 1861, which was lost and unrecorded.   Now, it
is not pretended that the deed of 1866 was not, as to Rorer,
effectual as a cancellation of, and release and quit-claim
under, the deed of 1861.   On the contrary, it is insisted
that the effect of the deed of 1866 was not only to re-invest
Rorer with his former rights, but to invest him with title
to Mrs. Rorer's land embraced in the deed of 1861.   It is
perfectly plain, then, that if the deed of 1866 worked a
cancellation of the deed of 1861 as to Rorer, there could
thereafter be no valid recordation of the last-named deed
as to him, and, therefore, none as to Mrs. Rorer, because
the statute expressly requires that the deed of a married
woman, to pass her title or interest in the property em-
braced therein, shall be delivered to the proper clerk and
admitted to record as to *the husband* as well as the wife.
All the requirements of the statute, including recordation
as to both *husband and wife*, must be complied with, or
else the wife's title does not pass.   It is plain, therefore,
that if the argument for the appellees could be true, it
would prove far too much for their purposes; it would

establish in Crawford a complete title to all the land embraced in the deed of 1861, and, besides, would give him the Pulaski land as a *bonus*, and all for the paltry sum of $10,744.20, which is all he ever paid, when the contract prices aggregate largely over the sum of $50,000. It is difficult to conceive a more absurd result; yet it would logically flow from the argument if the argument itself were true. It is impossible, in view of the statute and the proper interpretation of the deed of 1866, to escape the conclusion that if the pretended recordation of the deed of 1861 long after its cancellation is valid and binding as to Mrs. Rorer, it is equally valid and binding as to Rorer himself, and the absurd result above suggested would necessarily follow.

This is no new question. Upon no subject, perhaps, has the legislative policy of the State been more uniformly and clearly pronounced. This legislative policy dates back to early colonial times. The first act was passed in September, 1674, and was entitled "An act empowering *ffeame coverts* to make good acknowledgment of sales of land," and is as follows:

" Whereas the legall way in England of passing estates, where the inheritance is in a *ffeame covert*, is by way of ffine and recovery, and it being the usual way in this country for many yeares, we having noe ffines and recoveries, that sales have been made by the husband and wife of the inheritance of the wife by conveyance from them, and the said conveyances acknowledged in the generall or county courts by the husband and wife, the wife being first privately examined by the court whether she acknowledged the same freely, but there being no act of assembly to authorise the same : Be it therefore enacted by the governour and councell and burgesses of this grand assembly, and by the authority thereof, that all such sales and ac knowledgments that by husband and wife have at any time heretofore beene made in manner and forme as afore-

said, or shall hereafter be made, shall be good and effectual against the said husband and wife, their and every of their heirs and assignees, and against all other persons claiming by, from, or under them, or any of them, and that to all intents and purposes as if the same had been by ffine and recovery or any other way whatsoever." See Hen. Stats. 317.

The recitals in this quaintly expressed old statute make clear the historical fact that the English mode of procedure, by fine and recovery, was never in vogue in Virginia. By this act the conveyance of a married woman took effect by reason of the court's judicial act in making the privy examination of the wife and taking her acknowledgment, which, like the English mode, was matter of record in a court of record, and was declared to be as valid and effectual as if done " by ffine and recovery or any other way whatsoever." Being thus matter of record, and the action of a court of record, no other proof of the fact was competent, except, it might be, that the record *had once existed* and had been lost or destroyed. The fact had to be proved by the record, or else, in contemplation of law, the fact itself did not exist. This act continued in force until the act of October, 1705 (3 Hen. Stat. 304), which declared that no estate of inheritance shall pass except by deed in writing, duly *recorded* in the county wherein the land lies, and goes on to provide that a deed recorded within eight months shall take effect as if it had been recorded on the day on which it was acknowledged. The provision for recording within eight months was for the first time made by this act. This act also provides for the conveyances of married women substantially as by the preceding act of 1674; and declares that the prescribed mode shall be as effectual " as if done by fine and recovery, or by any other ways or means whatsoever; any law, custom, or usage to the contrary thereof notwithstanding."

The next act was that of October 1710 (3 Hen. Stat.

517), entitled "An act for settling the titles and bounds of lands, and for preventing unlawful shooting and ranging thereon." This act in no way varies the last preceding act.

The next act was passed in August, 1734, and by it the last preceding act was amended in many respects, leaving, however, untouched the provision as to recordation within eight months; and, among other things, this act, by the seventh section, goes on to provide, in addition to the provision for privy examination and acknowledgment in court, for a commission to issue by the clerk of the general court, or the clerk of any county court, to two or more commissioners, being justices of the peace in the county where the *feme* shall reside, for receiving the acknowledgment of any deed of such *feme covert* for passing her estate in any lands, tenements or hereditaments; and declaring a deed acknowledged before them, after they have examined her privily and apart from her husband touching her consent, and the same be certified to the judges before whom such commission shall be returnable, and shall be recorded, together with the commission and return, the same shall be as effectual as if the same had been personally acknowledged in court by such *feme covert.* * * * And then, by the eighth section, it is declared: "And whereas it has always been adjudged that when a deed has been heretofore acknowledged by a *feme covert,* and no record made of her privy examination, that such deed is not binding upon the *feme* or her heirs; yet the reason of those judgments are much questioned, and the same point is still constantly disputed. For settling the peace in that matter, be it further enacted, that the law shall always be held, and it is hereby declared to be therein according to the said judgments, and shall never hereafter be questioned; and the clerks of the courts, before whom any deed of a *feme covert* shall be acknowledged, shall always hereafter record her privy examination."

At this point in the history of the legislation on the subject in hand, and especially in view of the two last-named statutes, there is no room for doubt that a married woman's deed was inoperative and void until recorded. And in view of these statutes and those preceding them, such deed was inoperative and void merely from the fact that the privy examination, acknowledgment and declaration was a proceeding in a court of record, and could only be proved by the record; and, therefore, where there was no record of the fact, the court was held not to have acted.

The next act was that of October, 1748 (5 Hen. Stat. 408). This act retained the provisions for the privy examination and acknowledgment of a *feme covert* in court, or before commissioners as provided by previous acts; the provision for recordation within eight months; and then further provides that " where any *feme covert* hath heretofore relinquished her right of dower in lands or tenements, and acknowledged the same in court or before commissioners, and such acknowledgment has been recorded, the same shall be sufficient and effectual in law to convey and pass over all such right, although she has not executed and acknowledged any deed or conveyance for that purpose." These provisions are found in the fifth and sixth sections of the act. And then, by the seventh and eighth sections, it is declared:

7th. "And whereas it has always been adjudged, that when any deed has been acknowledged by a *feme covert*, and no record made of her privy examination, such deed is not binding upon the *feme* or her heirs.

8th. " It is hereby further enacted and declared, that the law herein shall always be held according to said judgments, and shall never hereafter be questioned; and the clerks of the courts before whom any deed of a *feme covert* shall be acknowledged, shall always hereafter record her privy examination."

At this point it is important to observe two things—first, the reiterated legislative declaration that deeds of married women, not recorded, shall be void; and, second, that even where the wife had *executed no deed,* but had *theretofore* gone through the form of assenting to her husband's deed, and had thereby relinquished her *right of dower* in lands and tenements, and the acknowledgment thereof had been recorded, *such record* was made essential to a valid conveyance of such estate. It must be borne in mind, however, that this provision extended only to the wife's dower interest, and only *made valid* her relinquishment of dower by such mode prior to this provision, and did not operate prospectively, nor did it apply to any estate or interest of the wife in lands, except her dower interest. This distinction is important, in view of the fact that in the first part of the same section (§ 5), it was provided : "That all deeds and conveyances heretofore made, or hereafter to be made, in writing, indented and sealed by the husband and wife, and by them personally acknowledged in the general court or county court, the wife having been first examined by such court privily and apart from her husband, and giving her free consent to the same, shall be and are hereby declared to be good and effectual in law," &c. * * * ; and in view of the further fact that the sixth section provides : "And that where any *feme covert* cannot conveniently travel to the general court, or county court, to acknowledge her deed for passing away her estate, it shall be lawful for the clerk of the general court, or of any county court, to issue a commission to two or more commissioners, being justices of the peace in the county where such *feme* resides, for receiving the acknowledgment of any deed of such *feme covert,* for passing her estate in any lands, tenements or hereditaments; and any such deed acknowledged before them, after they shall have examined her privily and apart from her husband touching her con-

sent, and thereof certified, the judges before whom such commission shall be returnable, shall be recorded, together with the commission and return, and shall be as effectual as if the same had been personally acknowledged in court by such *feme covert.*"

These two provisions—the one respecting the deeds of husband and wife, indented and sealed by them and personally acknowledged in court; and the other, respecting the acknowledgment by the wife before commissioners, out of court—are prospective in their operation, and embrace the estate or interest of the wife intended to be conveyed, whether it be her dower or other interest in the land embraced in the deed. And it will be observed, too, that to each of these provisions is superadded the other provision making valid the relinquishments of dower *theretofore* made by *femes covert*, though no deed had been executed and acknowledged by the wife for that purpose. In other words, in the case of a deed by husband and wife, personally acknowledged by *them* in court, and in the case where the wife could not conveniently attend court for the purpose, and her privy examination was made by commissioners as aforesaid, and her acknowledgment was taken and certified by them, and the commission and return duly recorded, the deed was in either case valid, whether theretofore made, or thereafter to be made and so acknowledged; whereas the other provision, as to the relinquishment of the wife's dower by simply assenting to her husband's deed, only made valid such mode of relinquishment in cases *theretofore* existing. It is to be observed also, that the acts prior to this act of 1748 declared that the mode thereby prescribed should be as effectual "as if the same had been done by fine and recovery or any other way whatsoever." Now, in this connection, it is important to bear in mind that the mode by fine and recovery bound the wife by all the covenants in the deed; and it was subsequently

so ruled in *Nelson* v. *Harwood,* 3 Call, 394, on facts that arose under this act of 1748.

The next act was passed in 1785, and was entitled "An act for regulating conveyances." This act, like previous acts, contained the provision that estates should only pass by deed, &c., and the provision giving the same effect to a deed recorded within eight months that it would have had if recorded on the day of its acknowledgment. The act then proceeds: " When husband and wife shall have sealed and delivered a writing purporting to be a conveyance of any estate or interest, if she appear in court, and, being examined privily and apart from her husband by one of the judges thereof, shall declare to him that she did freely and willingly seal and deliver the said writing, to be then shewn and explained to her, and wishes not to retract it, and shall, before said court, acknowledge the said writing, again shewn to her, to be her act, or if before two justices of the peace in that county in which she dwelleth, if her dwelling be in the United States of America, who may be empowered by commission to be issued by the clerk of the court wherein the writing ought to be recorded, to examine her privily and take her acknowledgment, the wife being examined privily and apart from her husband by those commissioners, shall declare that she willingly signed and sealed the said writing, to be there shewn and explained to her by them, and consenteth that it may be recorded; and the said commissioners shall return with the commission, and thereto annexed a certificate under their hands and seals of such privy examination by them, and of such declaration and consent yielded by her, in either case the said writing, acknowledged also by the husband, or proven by witnesses to be his act, and recorded, together with such her privy examination and acknowledgment before the court, or together with such commission and certificate, shall not only be sufficient to convey or release any right

of dower thereby intended to be conveyed or released, but be as effectual for every other purpose as if she were an unmarried woman."

This act needs no comment. It clearly announces the legislative purpose to strengthen and continue the policy theretofore existing. In this act we have for the first time the words "when husband and wife shall have sealed and delivered," &c., and the words "the said writing acknowledged also by the husband, or proven by witnesses to be his act, and recorded, together with such her privy examination, * * * shall * * * be as effectual for every other purpose as if she were an unmarried woman." The provision inserted in the act of 1734, that the conveyance of a married woman should be void when the privy examination and acknowledgment were not recorded, is omitted in this act, but the language used expresses clearly the same thing in smaller compass.

The next act was that of 1792 (Stats. at Large, new series, Shepherd), Vol. I., p. 84, ch. 28, entitled "An act for regulating conveyances." This act retains the provision in respect to recordation within eight months, the provisions contained in the preceding act, commencing with the words "When husband and wife have sealed and delivered a writing purporting," &c., and then goes on and makes provision for the case of a married woman not in the United States, and then proceeds to re-introduce, in terms, the provision which had been dropped out of the last preceding act declaring a married woman's conveyance void when there is no record made of her privy examina tion and acknowledgment.

In 1803 was decided the case of *Nelson* v. *Harwood, supra,* in which, as has been stated, it was held that the wife was bound by the covenants in her deed. Subsequent to this decision the first act passed was that of 1814 (Acts 1814, ch. 28, p. 75). This act contained the provision, as there-

tofore, as to the effect of a deed recorded within eight months from the date of its acknowledgment, and then, after dispensing with the necessity for a commission, and prescribing a form of certificate which should be sufficient, proceeds:

"The privy examination and acknowledgment so taken and certified shall be admitted to record in any court wherein the deed to which it is annexed may be recorded, and shall be entered in the book of records immediately below and following the record of said deed, and, when so recorded, shall be effectual in law to pass the right of dower or other interest in real estate of such *feme covert* in the same manner as if such privy examination and acknowledgment had been taken and certified by virtue of a commission issued in pursuance of existing laws," and then by the fourth section declares—

"§ 4. Be it further enacted, that no covenant or warranty contained in any deed executed hereafter by any *feme covert* shall in any manner operate upon her or her heirs further than to convey effectually from such *feme covert* and her heirs any right of dower or other interest in real estate which the said *feme* may be entitled to at the date of such deed."

By this act the effect of a married woman's deed is limited, so as to pass merely what estate she had at the date of the deed in the land conveyed. If the deed was recorded within eight months from the time of its acknowledgment, it took effect as if recorded on the day of such acknowledgment; and if not recorded until after eight months from its acknowledgment, it was inoperative and void. And when any such deed was recorded within the prescribed time, it then took effect as of the date of *recordation*, and passed, not the estate of the *feme* as of the time it took effect, but that "which the said *feme* was entitled to at the date of such deed." The conveyance thus ope-

rating to pass only the estate or interest held at the date of the deed, no covenant therein contained could bind the married woman, except to the extent of making valid the conveyance as to the estate or interest actually conveyed. Therefore no estoppel could arise as to the *feme.*

Doubtless the provision in the act of 1814, that no covenant or warranty in any deed thereafter made by a *feme covert* should in any way operate upon her and her heirs, except to convey effectually from such *feme* and her heirs any right of dower or other interest in the real estate conveyed, which such *feme* may be entitled to at the date of the deed, was prompted by the decision in *Nelson* v *Harwood, supra,* in which the wife was held bound by the covenants, and which was doubtless considered an innovation upon the spirit, if not the letter, of our legislative policy. Hence, at the first opportunity the legislature cor rected it.

This brings us to the consideration of the act of February, 1819 (1 Rev. Code, ch. 99, pp. 361–371). Section 12 of this chapter gives the effect of a deed recorded within eight months substantially as by previous statutes. Section 15 of same chapter, after in more concise language providing for taking privy examinations and acknowledgments, proceeds: "And when the privy examination, acknowledgment and declaration of a married woman shall have been so taken in court, and entered of record, or certified by two magistrates and delivered to the clerk to be recorded, and the deed also shall have been duly acknowledged or proven as to the husband, and delivered to the clerk to be recorded, pursuant to the directions of this act, such deed shall be as effectual in law to pass all the right, title and interest of the wife as if she had been an unmarried woman: provided, however, that no covenant or warranty contained in any such deed hereafter executed shall in any manner operate upon any *feme covert* or her

heirs further than to convey effectually from such *feme covert* and her heirs her right of dower or other interest in real estate which she may have at the date of such deed."

Such is the law of 1819, and it remained substantially unchanged until the revision of 1849, when, for the first time, the provision as to the effect of the recordation of any deed within eight months from its acknowledgment was taken out of the chapter last referred to, and was incorporated into another chapter, which is now section 7 of chapter 114, Code 1873. And the part of section 15, chapter 99, 1 Rev. Code 1819, prescribing the effect of acknowledgment of married women, when recorded, was condensed substantially into what is now section 7, chapter 117, Code 1873, which was the statute in force and applicable to the case in hand.

In comparing section 7, chapter 117, Code 1873 (the law now in force), with the language of 1 Revised Code, p. 366, it will be found that the condensation in the former was in part accomplished by transposition of a part of the language of the latter. It is clear, however, that there was no intention on the part of the legislature that the *recordation* should have a retroactive effect and relate back to the date of the deed—certainly not unless the deed was recorded within the prescribed period in which any deed would relate back to its acknowledgment; and even this would be questionable, because the deed of a married woman conveys what she had at *the date of the deed,* not what she had at *the date of the acknowledgment.* But this is really immaterial here, as it is not pretended in this case that the deed in question—the deed of 1861, in which Mrs. Rorer joined—was ever spread upon the record-book until many years after it had been cancelled and annulled by the deed of 1866. After which, as has been shown, it could not be recorded even as to F Rorer, because it had no existence; and being incapable of recordation as to him,

there could be no valid recordation of it as to Mrs. Rorer, because the statute requires that such deed, in order to its validity, must be recorded as to the "*husband* as well as the wife." The statute is absolute; there is no room for presumptions resulting from technical rules of construction, and all its requisites must be substantially complied with, or else nothing passes by the deed of a married woman.

As colony and State, such has been not only the general policy, but the unmistakable spirit and letter of the law in Virginia for over two hundred years. This court has no power or authority to depart from the established policy and strict letter of the law so plainly written as we find it in the numerous statutes referred to.

But it is agreed that if a married woman's deed only becomes effectual when it is duly admitted to record, then, if the wife should die between the date of the acknowledgment and the date of recordation, the instrument would *be wholly destroyed.* Not so, however; for as between the husband and the grantee the deed would be valid and binding, though as to the wife it would be inoperative— ineffectual to pass her title until duly recorded; for it is only then that a married woman's conveyance becomes a complete transaction. But it is useless to argue this proposition, as the pretended recordation, in 1875, of the deed of 1861 was prior to Mrs. Rorer's death. It is sufficient to say, if the question were presented directly for decision, it would be an exceedingly interesting one, as the authority for recordation at a time subsequent to the execution and delivery of the deed seems to rest solely upon the presumption of the wife's continuing acquiescence; and in 2 Tucker's Com., at page 268 (Book 2), the distinguished author significantly suggests the question whether recordation after the death of the wife would be effectual. But grant that the effect would be as contended by counsel for the

appellees, would it be less reasonable, less harsh, than the provision (ch. 114, Code 1873), which renders every contract in writing and deed conveying real estate void as to creditors and subsequent purchasers for valuable consideration without notice, until and except from the time that it is duly admitted *to record?* We think not. In fact, both provisions are founded in wisdom and sound policy— the one essential to the protection of the estates of married women who labor under the disabilities of coverture, and the other to protect innocent creditors and purchasers against the fraudulent use of secret contracts and convey ances.

And in the very poverty of their case, and distress of their situation, the learned counsel for the appellees were driven to the attempt to create a new estate in lands—one unknown to jurisprudence. It was insisted in argument that, although the deed of 1861 was lost and unrecorded when the deed of release and quit-claim of 1866 was made by Crawford and wife, yet Crawford had acquired, it is contended, under the first-named deed a *potential estate* in Mrs. Rorer's land, and that this was by Crawford and wife conveyed to F. Rorer by the deed of 1866, and that Rorer became thus vested with title to Mrs. Rorer's land. We know of no such estate; the books treat of none such ; and there is nothing in the statute in question recognizing anything of the kind. Indeed, no estate in land can be more potential—more complete than the absolute estate in fee. This Crawford would have had but for that palpable want of *potentiality* which went with him throughout all these transactions. 1st. He failed to record the deed of 1861 when it was executed and delivered to him. 2d. He lost the deed and could not record it. 3d. He became unable to complete his purchase by paying the full agreed price, and in this state of affairs, took from Rorer other land for the partial payments made, and thereupon

executed the deed of renunciation and quit-claim of 1866. In all these things we can but see Crawford's pitiable want of *potentiality.* In fact, Crawford only had *potentiality* to do what he did, and that was to take from Rorer what he could get for what he had paid to Rorer on the transaction of 1861, and then to reconvey to Rorer what he (Rorer) had conveyed by the deed of 1861; and then, out of abundant caution, to renounce, as he did, all claim under the deed of 1861. We have seen that the strange result of these arguments on the part of the appellees, if true, would be to vest a complete, and it would seem, unincumbered title to all the land embraced in the deed of 1861 in Crawford, and this when he is not even a party to the suit. In fact, the one incurable vice in the whole argument is the unwarranted assumption that the spreading of the deed of 1861 on the record-book in 1875, many years after its cancellation and annulment, constituted a valid recordation thereof. This, as has been shown, is not, and, in the nature of things, could not be true.

The principle which controls this case is by no means a new one. In the early acts referred to, we have again and again the emphatic legislative declaration that "it had always been adjudged that when a deed has been hereto fore acknowledged by a *feme covert,* and no *record* made of her privy examination, that such deed is not binding upon the *feme;*" and the further declaration that such judg ments were right *and should not thereafter be questioned.* And when *Nelson* v. *Harwood* was decided, in 1803, holding that a married woman was bound by the covenants in her deed, the legislature promptly declared by enactment that she should not be so bound, except as to the interest held by her at the date of the deed and embraced therein. Nor is it a new principle of decision in this court, in which, though the question has never before been presented in the form in which it is here presented, yet the precise

principle has been recognized and upheld in numerous cases, only one of which need be referred to, and that is the case of *First National Bank of Harrisonburg* v. *Paul and als.*, 75 Va. 594. In that case the wife joined with her husband in the sale and conveyance of a valuable tract of land to two of their sons. The deed was signed and sealed by husband and wife; the wife was privily examined, and her acknowledgment certified, and the deed was delivered and recorded; but the certificate of privy examination was defective in that it did not contain all the requisites prescribed by the statute. The husband died, and thereafter the wife filed her bill claiming dower in all of said lands, which had passed into the hands of third parties. The court decreed the wife her dower, and on appeal to this court that decree was affirmed. In delivering the unanimous opinion of the court in that case Staples, J., said: "What the law requires to be done and appear of record can only be done and made to appear by the record itself, or an exemplification of the record. It is perfectly immaterial whether there be an acknowledgment or privy examination in fact, or not, if there be no record of the privy examination, for by the express provision of the law it is not the fact of privy examination merely, but the *recording* of the fact, which makes the deed effectual to pass the estate of a *feme covert.*"

Between that case and this there can be no distinction upon principle. In each a requisite prescribed by statute as essential to the validity of a married woman's deed is wanting. That is enough, and it can make no difference whether the missing link was to be wrought by one acting in a judicial capacity or in a ministerial capacity. The statute in question (said section 7, chapter 117, Code 1873) admits of but one construction, and that is found in its unmistakable language. It must, therefore, be its own interpreter.

The result of this investigation, then, is that the decree of the court below, in so far as it affects the claim of the children of Mrs. Rorer to the 214¼ acres of land devised to her by her father, Patterson Hannah, and which was embraced in the said deed of 1861 from her husband and her to Crawford, is plainly erroneous, and must be reversed and annulled by a decree to be entered here in conformity with the views hereinbefore expressed.

DECREE REVERSED AS TO THE APPELLANTS, THE CHILDREN OF MRS. RORER.